518 S.E.2d 301

**VERMEER CAROLINA'S, INC., Appellant,**

v.

**WOOD/CHUCK CHIPPER CORPORATION, Respondent.**

**No. 3005.**

Court of Appeals of South Carolina.

Heard May 11, 1999.

Decided June 1, 1999.

56

Michael J. Ferri, of Grimball & Cabaniss, of Charleston, for Appellant.

Hoover C. Blanton, of McCutcheon, Blanton, Rhodes & Johnson, of Columbia, for Respondent.

ANDERSON, Judge:

Vermeer Carolina's, Inc., filed this action against Wood/ Chuck Chipper Corporation for indemnity or, alternatively, contribution for monies paid as a personal injury settlement with Elbert Causey. The trial court granted Wood/Chuck's motion for summary judgment. Vermeer appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Wood/Chuck manufactured a machine called a Model Series V Heavy Duty Chipper. On January 31, 1991, Causey purchased a used chipper from Vermeer. Causey was using the machine to chip logs and branches on August 21, 1992. At some point, Causey turned the machine off, but the rotor blade continued to turn. As Causey brushed away the wood chips that were concealing the rotor, the rotor amputated his right hand.

In his complaint, Causey alleged against Vermeer causes of action for breach of express and implied warranties, strict liability, and negligence. Causey pleaded strict liability and negligent design against Wood/Chuck.

On June 26, 1995, the day the trial was to begin, Causey requested a "nonsuit with prejudice for all claims contained in the complaint against Wood/Chuck Chipper Corporation." Over Vermeer's objection, the court issued an order granting Causey's motion. Vermeer did not appeal this order.

Instead of proceeding with the trial, Vermeer and Causey settled the case. Under the terms of the settlement, Vermeer made a lump sum payment to Causey of $200,000 and agreed to make monthly payments of $926 to Causey for the next five years. The settlement check, which was dated July 5, 1995, was posted to Causey's attorney's account on August 19, 1995. Yet, the agreement was not fully executed until September 5, 1995. The settlement agreement provided: "This Agreement and Release shall be come [sic] effective following execution by all parties." Causey, his wife, and his attorney signed the agreement on August 14, 1995. Vermeer's counsel signed it on August 21, 1995. A representative of Vermeer's insurance carrier signed the agreement on September 5, 1995.

Vermeer instituted this action seeking either indemnification or contribution from Wood/Chuck for the monies paid under the Causey settlement agreement. Wood/Chuck answered averring a general denial, various defenses, and a counterclaim under the South Carolina Frivolous Civil Proceedings Sanctions Act. Wood/Chuck filed a motion for summary judgment, which the trial court granted.

## ISSUES

I. Did the trial court err in finding Vermeer was not entitled to indemnification from Wood/Chuck?

II. Did the trial court err in holding Causey's dismissal of Wood/Chuck with prejudice extinguished any right of contribution Vermeer may have had against Wood/Chuck?

III. Did the trial court err in ruling Vermeer was not entitled to seek contribution or indemnification for its settlement of the claim of Mrs. Causey?

IV. Did the trial court err in finding Vermeer's action was barred by the statute of limitations?

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); Rule 56(c), SCRCP. *See also Wells v. City of Lynchburg*, 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998) (trial court should grant motion for summary judgment when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law). In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998); *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App. 1997). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland*, 305 S.C. 402, 409 S.E.2d 366 (1991); *Young, supra.*

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997); *Moriarty v. Garden Sanctuary Church of God*, 334 S.C. 150, 511 S.E.2d 699 (Ct.App.1999). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Young, supra; Truck South, Inc. v. Patel*, 332 S.C. 222, 503 S.E.2d 774 (Ct.App.1998). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Young, supra; Moriarty, supra.* However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Young, supra; Pye, supra.*

### *LAW/ANALYSIS*

### I. Equitable Indemnification

Vermeer contends the trial court erred in finding Vermeer was not entitled to indemnification from Wood/Chuck. We disagree.

South Carolina has long recognized the principle of equitable indemnification. *See Stuck v. Pioneer Logging Machinery, Inc.,* 279 S.C. 22, 301 S.E.2d 552 (1983); *Addy v. Bolton,* 257 S.C. 28, 183 S.E.2d 708 (1971). "Indemnity is that form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party. A right to indemnity may arise by contract (express or implied) or by operation of law as a matter of equity between the first and second party." *Town of Winnsboro v. Wiedeman–Singleton, Inc.* (*Winnsboro I* ), 303 S.C. 52, 56, 398 S.E.2d 500, 502 (Ct.App.1990), *aff'd,* 307 S.C. 128, 414 S.E.2d 118 (1992) (*Winnsboro II* ) (citation omitted).

Traditionally, courts have allowed equitable indemnity in cases of imputed fault or where some special relationship exists between the first and second parties. *See Winnsboro I; First General Servs. v. Miller,* 314 S.C. 439, 445 S.E.2d 446 (1994). Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him. *Atlantic Coast Line R.R. v. Whetstone,* 243 S.C. 61, 132 S.E.2d 172 (1963). This is subject to the proviso that no personal negligence of his own has joined in causing the injury. *Id.* In *Stuck v. Pioneer Logging Machinery, Inc.,* 279 S.C. 22, 301 S.E.2d 552 (1983), our Supreme Court explained:

> We note that the modern trend concerning the right to indemnity is to look to principles of equity. According to equitable principles, a right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify

the other, as where one person is exposed to liability by the wrongful act of another in which he does not join.

*Stuck,* 279 S.C. at 24, 301 S.E.2d at 553.

The law of equitable indemnification allows recovery of expenses when the act of the wrongdoer involves the innocent defendant in litigation or places him in such relation with others as makes it necessary to incur expenses to protect his interest. *See Addy v. Bolton,* 257 S.C. 28, 183 S.E.2d 708 (1971). "Expenses" under the *Addy* rule include any costs which are reasonably necessary to defend litigation or otherwise protect the innocent party's interest. This Court, in *Griffin v. Van Norman,* 302 S.C. 520, 397 S.E.2d 378 (Ct.App. 1990), determined settlement costs were recoverable in a cause of action for indemnity. In *Griffin,* Van Norman (home seller) employed an exterminator to provide a Wood Infestation Report required by the Griffins (home buyers) before the sale of the house could be complete. After the sale was consummated, the Griffins discovered the report was false. The Griffins initiated an action alleging fraudulent representation against Van Norman and the exterminating company. Van Norman filed a cross-claim averring " 'any damage suffered by the Plaintiffs in this matter is due to the negligence or misrepresentation of the [exterminator].' " Each defendant separately settled with the Griffins. The cross-claim proceeded to a trial before the judge without a jury. The judge ruled in favor of Van Norman against the exterminator, awarding judgment in the amount paid to the Griffins as settlement. This Court, in affirming the trial court's award of indemnification to Van Norman, instructed:

It was the contention of the Exterminator in the court below and here that the Exterminator and the Home Seller were joint tortfeasors. The trial judge found that the Home Seller "does not base her claim against [the Exterminator] upon an alleged right of indemnification from joint tortfeasors. Rather, she claims that any damages suffered by the Griffins were the result of [the Exterminator's] sole negligence or misrepresentation." The judge further found "that the loss suffered by the Griffins [Home Buyers] was occasioned solely by the wrong of the defendant [Exterminator]." Furthermore, he found "there is no evidence that Van Norman [Home Seller] took an active role in the

alleged fraud perpetuated [sic] upon the Griffins." The evidence proves conclusively that she had no knowledge that the certification was false. The Exterminator submits no proof to the contrary. The findings and conclusion of the judge are amply supported by the evidence.

. . . .

We hold that the cost of settling a case is recoverable under the rule [of equitable indemnification] (1) if the settlement is bona fide, with no fraud or collusion by the parties; (2) if, in the circumstances, the decision to settle is a reasonable means of protecting the innocent party's interest; and (3) if the amount of the settlement is reasonable in light of the third party's estimated damages and the risk and extent of defendant's exposure if the case is tried.

In this case, all three elements are satisfied. The settlement of Home Buyers' action was bona fide. The decision to settle was reasonable in the circumstances, because it "bought peace" and avoided a costly trial which might possibly result in a verdict adverse to the Home Seller. Finally, the amount of settlement was reasonable. In all likelihood, it was less than the costs and attorney's fees Home Seller would have incurred in a defense at trial—even a successful defense.

*Griffin*, 302 S.C. at 522–24, 397 S.E.2d at 379–80.

The case of *Otis Elevator, Inc. v. Hardin Constr. Co. Group*, 316 S.C. 292, 450 S.E.2d 41 (1994), edifies in regard to averments against parties and voluntary settlement activities:

Hardin Construction also argues Otis Elevator was not entitled to indemnity because Smith sued Otis Elevator "solely in [Otis Elevator's] capacity as a manufacturer/seller of a defective product rather than in its capacity as [Hardin Construction's] sub-contractor." In light of Smith's allegation that Otis Elevator was negligent in "falling to provide an attendant or someone to oversee the use of the elevator," we find this argument is without merit.

Hardin Construction argues Otis Elevator was not entitled to indemnity because Otis Elevator voluntarily paid Smith an unreasonable settlement amount. We disagree.

An innocent indemnitee who has been sued by a third party may recover the cost of settling a case:

(1) if the settlement is bona fide, with no fraud or collusion by the parties; (2) if, in the circumstances, the decision to settle is a reasonable means of protecting the innocent party's interest; and (3) if the amount of the settlement is reasonable in light of the third party's estimated damages and the risk and extent of defendant's exposure if the case is tried.

*Id.* at 523, 397 S.E.2d at 380.

Where, as here, the indemnitee gave the indemnitor notice and an opportunity to participate in the litigation, the indemnitee is not "required to prove the plaintiff's *actual* liability to recover the amount paid in settlement so long as the indemnitee proves that he was *potentially* liable to the plaintiff." 42 C.J.S. *Indemnity* § 24, at 113–14 (1991) (emphasis added).

*Otis Elevator,* 316 S.C. at 296–97, 450 S.E.2d at 44.

■ With certitude, we note this case does not involve any application or analysis of contractual indemnity. Our review of the South Carolina precedent extant on the law of equitable indemnification reveals a trifurcated elemental analysis by the fact finder. For a party to recover under a theory of equitable indemnification, three things must be proven: (1) the indemnitor was liable for causing the Plaintiff's damages; (2) the indemnitee was exonerated from any liability for those damages; and (3) the indemnitee suffered damages as a result of the Plaintiff's claims against it which were eventually proven to be the fault of the indemnitor.

■ Equitable indemnity cases involve a fact pattern in which the first party is at fault, but the second party is not. *Town of Winnsboro v. Wiedeman–Singleton, Inc. (Winnsboro I )*, 303 S.C. 52, 398 S.E.2d 500 (Ct.App.1990), *aff'd*, 307 S.C. 128, 414 S.E.2d 118 (1992) *(Winnsboro II )*. If the second party is also at fault, he comes to court without equity and has no right to indemnity. *Id.* The most important requirement for the finding of equitable indemnity is that the party seeking to be indemnified is adjudged without fault and the indemnifying party is the one at fault. *See Addy v. Bolton,* 257 S.C. 28, 183 S.E.2d 708 (1971); *Winnsboro I, supra.*

Under South Carolina law, there can be no indemnity among mere joint tortfeasors. *Scott v. Fruehauf Corp.*, 302 S.C. 364, 396 S.E.2d 354 (1990); *Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 301 S.E.2d 552 (1983); *Atlantic Coast Line R.R. v. Whetstone*, 243 S.C. 61, 132 S.E.2d 172 (1963). Parties that have no legal relation to one another and who owe the same duty of care to the injured party share a common liability and are joint tortfeasors without a right of indemnity between them. *Scott, supra.*

Therefore, if Vermeer and Wood/Chuck are joint tortfeasors, there is no right of indemnity. "Joint tortfeasor" refers to "[t]hose who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury"; "two or more persons jointly or severally liable in tort for the same injury to person or property." Black's Law Dictionary 839 (6th ed. 1990). To determine whether Vermeer and Wood/Chuck are joint tortfeasors, we factually analyze the record.

The trial court concluded the parties were joint tortfeasors based solely on Causey's pleadings. The allegations of the complaint are not determinative of whether a party has the right to indemnity. *See Griffin v. Van Norman*, 302 S.C. 520, 522, 397 S.E.2d 378, 379 (Ct.App.1990) ("The Complaint serves merely as a background to this [indemnification] litigation. Allegations in a Complaint denied in answer are evidence of nothing."). *See also First General Servs. v. Miller*, 314 S.C. 439, 445 S.E.2d 446 (1994) (defendant's mere allegations in counterclaim as to negligence of plaintiff may not defeat plaintiff's right to claim derivative liability); *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 324 S.C. 309, 476 S.E.2d 708 (Ct.App.1996) (allegations of complaint are not determinative of right to indemnity; rather, such determination is based on evidence and facts found by fact finder).

A party opposing a summary judgment motion on an indemnification claim, even though the motion is based primarily upon the complaint, has the two-fold burden of demonstrating a genuine issue of material fact regarding the opposing party's lack of liability and a genuine issue of material fact regarding the moving party's liability. *See* Rule 56, SCRCP. *See also Griffin, supra* (where party seeking indemnity was

exonerated at trial from all liability and codefendant is found liable, indemnity is allowed). The failure to meet this two-fold burden is fatal to the indemnification claim. We find Vermeer did not meet this burden.

 Vermeer sold to Causey the used Wood/Chuck Chipper which amputated his right hand. A seller's strict liability for a defective product is set out in S.C.Code Ann. § 15–73–10 (1977):

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

The South Carolina Supreme Court addressed the issue of indemnification in a strict liability scenario in *Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 301 S.E.2d 552 (1983). In that case, Stuck, who was in the pulpwood business, purchased from Pioneer Logging Machinery, Inc., a mechanical harvesting machine which was mounted on a used International truck. In buying the piece of equipment, Stuck relied on the assurances of Pioneer's agent that the truck was suitable for Stuck's intended use, which included harvesting timber and moving upon highways from one timber site to the next. When Stuck's agent attempted to drive the equipment to a job site for the first time, the truck's rear axle shifted when the driver put on the brakes, causing him to lose control and collide head on with an approaching vehicle. The resulting collision killed the driver of the oncoming vehicle, Mr. Hastings, and seriously injured the passenger, Mr. Woods.

Hastings' administratrix (the third party) brought a wrongful death action against Stuck (the second party) and his driver. After a jury verdict for actual damages, Stuck gave Notice of Intent to Appeal. Pending appeal, however, Stuck settled the suit for $97,000, an amount less than the verdict. Additionally, Stuck settled Woods' claim for $47,000. In both cases, Stuck requested Pioneer (the first party) to participate in the suits, but Pioneer refused. Stuck then initiated an action for indemnification based on strict liability and breach of implied and express warranties. The Supreme Court concluded:

[Stuck's] action is not based on negligence. He asserts that [Pioneer] is liable on grounds separate from any purported fault of his: [Pioneer] sold a defective product in an unreasonably dangerous condition, and it breached its warranty that the truck was roadworthy. This action is not based upon any claimed right of indemnity from a joint tortfeasor. Rather, it is an action to recover damages sustained by [Stuck] from [Pioneer's] failure to ensure the safe condition of the equipment it sold [Stuck]. Under the facts of this case, [Stuck's] failure to discover and correct the latent defects and correct [Pioneer's] breach of warranties cannot excuse the breach and defeat [Stuck's] claim.

*Stuck*, 279 S.C. at 24–25, 301 S.E.2d at 553.

The legal relationship *inter sese* of parties under a strict liability theory is explicated with exactitude in *Scott v. Fruehauf Corp.*, 302 S.C. 364, 396 S.E.2d 354 (1990), a products liability case. Scott was injured when he attempted to place a mounted wheel assembly on the axle of a trailer. The wheel rim and side ring explosively separated, striking Scott in the head.

The defective wheel assembly consisted of a multipiece rim and a side ring both manufactured by Firestone Tire and Rubber Company and sold to a trailer manufacturer. The rim and ring were not designed to be used together. The trailer manufacturer sold Fruehauf the trailer in question in a used condition. Fruehauf repaired and reconditioned the trailer, including the tires, but did not break down the wheel assemblies for inspection. Evidence indicates Fruehauf knew at the time that such wheel assemblies are dangerous if assembled

from mismatched parts. Fruehauf sold the trailer to Piedmont, who then leased it to Scott's employer, a cement company. The incident in which Scott was injured occurred two years later.

Scott settled his claim against Firestone for $675,000 with a guarantee of an additional $200,000 if he did not recover against other parties. He commenced this action and received a verdict based on strict liability and negligence against Fruehauf and strict liability only against Piedmont. On appeal, Fruehauf contended the trial court erred in submitting Piedmont's cross-claim for indemnification to the jury because there is no right of indemnity between joint tortfeasors. Citing the rule there can be no indemnity among mere joint tortfeasors, the Court enunciated:

> Parties that have no legal relation to one another and who owe the same duty of care to the injured party share a common liability and are joint tortfeasors without a right of indemnity between them. Here, Fruehauf and Piedmont shared a common liability to the ultimate consumer, Scott, under our strict liability law. Fruehauf and Piedmont each contributed to the consumer's injury by selling a defective product. We hold common law indemnification does not apply among joint tortfeasors in strict liability.

*Scott*, 302 S.C. at 371, 396 S.E.2d at 358 (citations omitted) (footnote omitted).

Absent a contractual provision whereby the upstream manufacturer agreed to indemnify the downstream retailer, the retailer cannot escape liability and, at the same time, prove the manufacturer negligently designed or manufactured a product. Vermeer did not show there was a genuine issue of material fact that Vermeer was *not* a joint tortfeasor, but was the innocent defendant entitled to indemnification from Wood/ Chuck.

Clearly, if a seller of a product is strictly liable simply by virtue of selling a defective product, then if Vermeer is not strictly liable, neither is Wood/Chuck. *See Scott, supra.* Applying *Stuck* and *Scott* to the facts of this case, we hold Vermeer has no right of indemnification against Wood/Chuck as to the strict liability cause of action.

## II. Contribution

Vermeer argues the trial court erred in holding Causey's dismissal with prejudice of Wood/Chuck extinguished any right of contribution Vermeer may have had against Wood/Chuck. We disagree.

The common law rule against contribution was abrogated in 1988 when our General Assembly enacted the South Carolina Uniform Contribution Among Tortfeasors Act, S.C.Code Ann. §§ 15–38–10 to –70 (Supp.1998). Where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. S.C.Code Ann. § 15–38–20(A) (Supp.1998). The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share. S.C.Code Ann. § 15–38–20(B) (Supp.1998). Section 15–38–40(D)(2) provides: "If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has … agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution."

The basic premise of contribution is commonality. Under the statute, "common liability," rather than joint negligence, determines the right to contribution. *See* S.C.Code Ann. § 15–38–40(D) (Supp.1998). "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable." S.C.Code Ann. § 15–38–20(D) (Supp.1998).

Here, Causey dismissed with prejudice all causes of action against Wood/Chuck. The dismissal operates as an adjudication on the merits terminating the action and concluding the rights of the parties. *See Freeman v. McBee,* 280 S.C. 490, 313 S.E.2d 325 (Ct.App.1984). Because Wood/Chuck had been dismissed with prejudice, it could not be liable to Causey

for his injury. Vermeer did not extinguish any liability of Wood/Chuck to Causey because no liability of Wood/Chuck to Causey existed to be extinguished. In the same vein, there was no "common liability" that could have been discharged by the settlement agreement. The only liability that could have been discharged by the agreement was the potential liability of Vermeer to Causey. Vermeer could not discharge what did not exist.

### III. Mrs. Causey's Potential Claim

Vermeer maintains the release of Mrs. Causey's potential loss of consortium claim constitutes the "discharge" of a "common liability" and, thus, the trial court erred in holding Vermeer was not entitled to seek contribution or, in the alternative, indemnification for its settlement of Mrs. Causey's claim. We disagree.

Mrs. Causey never sued either Vermeer or Wood/Chuck. She was not a party to the action brought by her husband. There was no admission of liability concerning Mrs. Causey. Neither company was compelled to pay anything to Mrs. Causey. When asked through Wood/Chuck's interrogatories to set forth an itemized statement of all damages claimed to have been sustained, Vermeer answered: "The Plaintiff has been damaged in the amount of the settlement paid to *Elbert Causey,* Two Hundred Thousand Dollars ($200,000.00) and Nine Hundred Twenty Six Dollars ($926.00) per month for five years, plus costs and attorneys fees incurred in bringing this action." There is no claim for and no mention in the Answers to interrogatories of any payment having been made to Mrs. Causey. Vermeer did not "discharge" any "common liability" as to Mrs. Causey because there was no "common liability." As a result, Vermeer was not entitled to contribution from Wood/Chuck as to any potential claim by Mrs. Causey. Further, regarding the alternative claim, Vermeer was not entitled to indemnification as to Mrs. Causey.

The South Carolina Uniform Contribution Among Tortfeasors Act "provides that a right of contribution exists in favor of a tortfeasor who has paid more than his pro rata share of the common liability." Wood/Chuck relies upon the lack of allocation of any payment from Vermeer's insurance carrier to

Mrs. Causey. The parties cite no South Carolina case involving a settlement agreement among several parties with no allocation of damages. On this point, the case of *Houser v. Witt,* 111 Ill.App.3d 123, 66 Ill.Dec. 799, 443 N.E.2d 725 (1982), is enlightening:

> The basis of the trial court's directed verdict was that Witt could not prove his damages. The settlement agreement between Witt, Dennis and Judith did not allocate the amount of the settlement attributable to Judith's claim. Consequently, since Witt could not establish the amount he paid in settlement of Judith's claim, there was no way to determine the amount he paid on Judith's claim in excess of his pro rata share. . . .
>
> In order for a party to be entitled to contribution, he must allege and the evidence must show the amount he has paid in excess of his just proportion of the joint indebtedness. . . .
>
> . . . .
>
> . . . There is nothing in the Contribution Act, nor in subsequent case law, to negate the proposition that one seeking contribution must be able to establish the amount to which he is entitled. . . .
>
> Witt argues that the release provides "very good evidence" of the amount paid to Judith, but he does not explain how this amount may be deduced. It is evident from the record that Judith's immediate injuries were much more severe than Dennis's, but this is no indication per se that Dennis's injuries were negligible. The release provides that it covers not only existing injuries, but also "any and all known and unknown, foreseen and unforeseen injuries" for both Dennis and Judith. . . . In short, the open-end, blanket, joint release gives no indication as to how the amount paid for the release relates to any present or future damage to either party. In this case lack of apportionment may work a hardship on Witt, but it is one which he could have avoided by a properly drawn release.

*Houser,* 66 Ill.Dec. 799, 443 N.E.2d at 726–28.

The settlement agreement does not place a specific value on any potential claim by Mrs. Causey. Under the agreement, no portion of the settlement is allocated to her for any

potential loss of consortium claim. We cannot, therefore, determine whether Vermeer paid more than its pro rata share of liability to Mrs. Causey. *See* S.C.Code Ann. § 15–38–20(B) (Supp.1998) (right of contribution exists only in favor of tort-feasor who has paid more than his pro rata share of common liability, and his total recovery is limited to amount paid by him in excess of his pro rata share).

## IV. Statute of Limitations

Vermeer avers the trial court erred in holding Vermeer's action was barred by the statute of limitations. As a supposed basis for this contention, Vermeer references the following portion of the trial court's order:

> Vermeer's settlement agreement with the Causeys includes monthly payments extending into the year 2000. Vermeer will not "discharge" this liability within one year of its agreement. Vermeer will not discharge this liability within the period of limitations applicable to the Causeys' right of action against it. The settlement agreement was not even effective until the period of limitations had run.

Vermeer's appellate brief questions whether the trial court actually ruled on this issue: "In granting summary judgment . . ., the Court appeared to somehow reach the conclusion that Vermeer's claims were barred by the statute of limitations."

Although the trial court mentioned Vermeer did not " 'discharge' this liability within one year of its agreement," apparently based on the five year monthly payments,[1] the trial court did not rule Vermeer did not bring this action against Wood/Chuck within the applicable one year period for seeking contribution under the Act. No one disputes the claim against Wood/Chuck was brought within one year after settling the case. We find no error.

## *CONCLUSION*

We hold Vermeer is not entitled to indemnification. Further, we rule there is no contribution available to Vermeer under the South Carolina Uniform Contribution Among Tort-

---

**1.** We express no opinion on whether an annuity provision affects the determination of whether a tortfeasor discharged a common liability within one year. This issue was not presented to the trial court.

feasors Act. Accordingly, the order of the trial court granting summary judgment to Wood/Chuck is

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.